**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| G.A. NELSON, individually and on behalf of all others similarly situated,<br><br>              Plaintiff,<br><br>    v.<br><br>NARA ORGANICS, INC. and<br>ORGANIC WEST MILK, INC.,<br><br>              Defendants. | Case No. 1:26-cv-6850<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff G.A. NELSON ("Plaintiff"), individually and on behalf of all others similarly situated, by his attorneys, alleges the following upon information and belief, except for those allegations pertaining to Plaintiff, which are based on personal knowledge.

## NATURE OF THE ACTION

1.      This action seeks to remedy the deceptive and misleading business practices of Defendants NARA ORGANICS, INC. (hereinafter "Nara Organics") and ORGANIC WEST MILK, INC. (hereinafter "Organic West" and, together with Nara Organics, "Defendants") with respect to the manufacturing, sourcing, marketing, and sale of Nara Organics infant formula products, including the Nara Organics Whole Milk Organic Powdered Infant Formula, throughout the United States (hereinafter the "Products") which contained Clostridium botulinum.

2.      Defendants have improperly, deceptively, and misleadingly labeled and marketed the Products to reasonable consumers, like Plaintiff, by omitting and not disclosing to consumers

1

on the packaging that the Products are contaminated or are at risk of being contaminated with Clostridium botulinum, a bacterium which causes life-threatening illnesses such as infant botulism.

3. On June 12, 2026, the FDA notified Nara Organics that the agency was investigating cases of infant botulism, a rare but serious illness, occurring in infants who had consumed the formula.

4. The FDA and CDC ultimately identified four confirmed infant botulism illnesses connected to the Products across multiple states.

5. Shortly thereafter, on June 13, 2026, a voluntary recall of Nara Organics brand Whole Milk Organic Powdered Infant Formula was initiated in response to the Food and Drug Administration's (FDA) investigation concerning infant botulism (collectively the "Recall").

6. Infant botulism is a rare, but an incredibly serious illness which is caused when infants consume spores produced by the bacteria Clostridium botulinum.

7. Consumption of the spores generally results in infants developing constipation, poor feeding, loss of head control, and difficulty swallowing.

8. In severe cases, consumption of Clostridium botulinum spores can result in infants experiencing flaccid paralysis, which can cause respiratory arrest and require hospitalization.

9. The California Department of Public Health (CDPH) detected Clostridium botulinum in an opened can of Nara Organics powdered infant formula obtained from the home of one of the sickened infants.

10. Further traceback investigations by the FDA determined that the Nara Organics infant formula lots linked to these illnesses were made with milk supplied by Defendant Organic West Milk.

11.     Organic West Milk was also the supplier of the organic whole milk linked to the outbreak of infant botulism in ByHeart Powdered Infant Formula in November 2025.

12.     Parents who purchased the formula for their families, such as Plaintiff, reasonably expected that the formula they purchased would be safe for consumption and would not contain, or be at risk of containing, any harmful substances such as Clostridium botulinum.

13.     Defendants are using a marketing and advertising campaign that omits from the packaging that the Products contain, or risk containing, Clostridium botulinum.

14.     Knowing of the presence of Clostridium botulinum is material to reasonable consumers.

15.     The presence of Clostridium botulinum was solely within the possession of Defendants, and consumers could only obtain such information by sending the products off to a laboratory for extensive testing.

16.     This omission leads a reasonable consumer to believe they are not purchasing a product with a known bacterium such as Clostridium botulinum when in fact they are purchasing a product that is indeed contaminated with the dangerous bacterium.

17.     Consumers, such as Plaintiff, trust manufacturers and suppliers like Defendants to sell products that are safe for their children to consume and are free from known harmful substances, including Clostridium botulinum.

18.     Defendants' marketing and advertising campaign includes the one place that every consumer looks when purchasing a product—the packaging and labels themselves.

19.     As such, a reasonable consumer reviewing the labels reasonably believes that they are purchasing a product that is safe for consumption and does not contain any harmful bacteria.

3

20.    Thus, reasonable consumers would not think that Defendants are omitting that the Products contain, or are at risk of containing, Clostridium botulinum.

21.    Defendants' advertising and marketing campaign is false, deceptive, and misleading because the Products do contain, or risk containing, Clostridium botulinum, which is dangerous to one's health and well-being.

22.    Nevertheless, Defendants do not list or mention Clostridium botulinum anywhere on the Products' packaging or labeling.

23.    As set forth below, infant formula containing or at risk of containing Clostridium botulinum is by no means safe for consumption and thus is entirely worthless.

24.    Plaintiff and Class Members paid a price premium for the Products based upon Defendants' marketing and advertising campaign including false and misleading representations and omissions on the Products' labels.

25.    Given that Plaintiff and Class Members paid a premium for the Products, Plaintiff and Class Members suffered an injury in the amount of the premium paid.

26.    Accordingly, Defendants' conduct violated and continues to violate, inter alia, New York General Business Law §§ 349 and 350. Defendants also breached and continue to breach warranties regarding the Products.

27.    Plaintiff brings this action against Defendants on behalf of himself and Class Members who purchased the Products during the applicable statute of limitations period (the "Class Period").

## JURISDICTION AND VENUE

28.    This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. section §1332(d) in that (1) the matter in controversy exceeds the sum or value of

$5,000,000, exclusive of interest and costs, (2) the action is a class action, (3) there are Class members, including Plaintiff, who are diverse from Defendants, and (4) there are more than 100 Class members.

29.     This Court has personal jurisdiction over Defendants because Defendants conduct and transact business in the state of New York, contract to supply goods within the state of New York, and supply goods within the state of New York.

30.     Venue is proper because Defendant Nara Organics' principal place of business is located in this District. Additionally, a substantial part of the events or omissions giving rise to the Classes' claims occurred in this district.

## PARTIES

### Plaintiff

31.     Plaintiff G.A. Nelson is, and at all times relevant to this action was, a citizen and resident of New York, New York.

32.     During the relevant period, Plaintiff Nelson regularly purchased the Products that possibly contained or had the risk of containing Clostridium botulinum.

33.     Most recently, Plaintiff purchased Nara Organics Whole Milk Organic Infant Formula directly from the Nara website, with deliveries received on or around March 6, 2026, and March 11, 2026 (Order #34545).

34.     Prior to purchasing the Product, Plaintiff saw the packaging of the Product and reviewed information on the website concerning the Products. Based on the packaging and representations, Plaintiff believed that the Products were safe for his child to consume.

35.     Had Defendants not made the false, misleading, and deceptive representations and omissions regarding the contents of the Products, Plaintiff would not have been willing to purchase the Products or pay as much for the Products.

36.     Plaintiff purchased, purchased more of, and/or paid more for, the Products than he would have had he known the truth about the Products.

37.     The Products Plaintiff received were worthless because they possibly contained Clostridium botulinum.

38.     Alternatively, Plaintiff paid a price premium based on Defendants' false, misleading, and deceptive misrepresentations and omissions. Accordingly, Plaintiff was injured in fact and lost money as a result of Defendants' improper conduct.

**Defendant**

39.     Defendant Nara Organics, Inc. is a New York company with its headquarters and principal place of business in New York, New York.

40.     Defendant Nara Organics manufactures, markets, advertises, and distributes the Products throughout the United States. Defendant created and/or authorized the false, misleading, and deceptive advertisements, packaging, and labeling of its Products.

41.     Defendant Organic West Milk, Inc. is a California-based supplier of organic whole milk that supplied the contaminated milk used in the manufacture of the recalled Nara Organics Products. Organic West Milk distributes its dairy ingredients into the stream of commerce nationwide.

## FACTUAL BACKGROUND

42. Defendants manufacture, source ingredients for, market, advertise, and sell infant formula.

43. Consumers, such as families purchasing infant formula, have become increasingly concerned about the effects of ingredients in products that are being orally ingested by their children.

44. Companies have capitalized on consumers' desire for healthy food products which promote the well-being and growth of their children, and indeed, consumers are willing to pay, and have paid, a premium for these products.

45. Consumers lack the meaningful ability to test or independently ascertain or verify whether a product contains unsafe substances, such as Clostridium botulinum, especially at the point of sale.

46. Therefore, consumers must and do rely on Defendants to truthfully and honestly report what the Products contain or are at risk of containing on the Products' packaging or labels.

47. The Products' packaging does not identify Clostridium botulinum. Indeed, Clostridium botulinum is not listed anywhere on the packaging, nor is there any warning about the inclusion (or even potential inclusion) of Clostridium botulinum in the Products.

48. This leads reasonable consumers to believe the Products do not contain, and are not at risk of containing, Clostridium botulinum.

49. However, the Products contain, or are at risk of containing, Clostridium botulinum.

50. Defendants are large and sophisticated entities that have been in the business of producing, manufacturing, selling, and distributing food products for many years.

51. Defendants are in the unique and superior position of knowing the ingredients and raw materials used in the manufacturing of the Products and possess unique and superior

7

knowledge regarding the manufacturing process, the sourcing, and the risks associated with those processes, such as the risk of Clostridium botulinum contamination.

52. Defendant Organic West Milk supplied the organic whole milk used to manufacture the specific Nara Organics formula lots linked to the illnesses in this outbreak.

53. Alarmingly, Organic West Milk was the exact same supplier of organic whole milk linked to the previous outbreak of infant botulism in ByHeart Powdered Infant Formula in November 2025.

54. Despite being implicated in the 2025 botulism outbreak, Organic West Milk actively hindered regulatory traceback efforts.

55. During the FDA's 2025 investigation, Organic West Milk provided an incomplete customer list that deceptively omitted their supply relationship with the manufacturers of Nara Organics.

56. It was only during the current 2026 outbreak investigation that Organic West Milk admitted to the FDA that their previously provided customer information was incomplete and should have included Nara Organics.

57. This suppression of material supply chain information demonstrates a reckless disregard for consumer safety and directly contributed to the continued distribution and sale of contaminated infant formula.

58. Accordingly, Defendants possess superior knowledge regarding the risks involved in the production and manufacturing of the Products. Such knowledge is not readily available to consumers like Plaintiff and Class Members.

59. Defendants have a duty to provide consumers, like Plaintiff and Class Members, with accurate information about the contents of the Products.

8

60. Therefore, Defendants' false, misleading, and deceptive omissions regarding the Products containing Clostridium botulinum are likely to continue to deceive and mislead reasonable consumers.

61. Defendants' misrepresentations and omissions were material and intentional because families are concerned with what is in the products that are orally ingested by their children.

62. Consumers such as Plaintiff and Class Members are influenced by Defendants' marketing and advertising campaign, the Products' labels, and the listed ingredients.

63. Defendants know that if they had not omitted that the Products contained Clostridium botulinum, then Plaintiff and the Class would not have purchased the Products, or, at the very least, would not have paid nearly as much for the Products.

64. Consumers rely on marketing and information in making purchasing decisions.

65. By omitting that the Products include botulism on the labels of the Products throughout the Class Period, Defendants know that those omissions are material to consumers since they would not purchase a product that contained Clostridium botulinum.

66. Defendants' deceptive representations and omissions are material in that a reasonable person would attach importance to such information and would be induced to act upon such information in making purchase decisions.

67. In making the false, misleading, and deceptive representations and omissions described herein, Defendants knew and intended that consumers would pay a premium for a product marketed without Clostridium botulinum over comparable products not so marketed.

68. As an immediate, direct, and proximate result of Defendants' false, misleading, and deceptive representation and omission, Defendants injured Plaintiff and Class Members in that

9

they paid a sum of money for Products that were not as represented; paid a premium price for Products based on false and misleading misrepresentations; were deprived of the benefit of the bargain; and received entirely worthless products.

69.     Plaintiff and Class Members paid for Products that do not contain Clostridium botulinum. Since the Products do indeed or possibly contain Clostridium botulinum, the Products received were worth less than what was paid.

70.     Consequently, Plaintiff and Class Members have suffered injury in fact and lost money as a result of Defendants' wrongful conduct.

71.     Plaintiff and Class Members saw the Products' packaging prior to purchasing the Products. Had they known the truth, they would not have been willing to purchase them at any price, or, at minimum, would have paid less for them.

## CLASS ALLEGATIONS

72.     Plaintiff, individually and on behalf of all others similarly situated, brings this class action pursuant to Fed. R. Civ. P. 23.

73.     As detailed in this Complaint, Defendants orchestrated deceptive marketing, labeling, and manufacturing practices that uniformly impacted its customers.

74.     The proposed Class is defined as follows:

**Nationwide Class:** All persons within the United States who purchased Defendants' affected Products.

**New York Subclass:** All persons who purchased Defendants' affected Products within the State of New York.

75.     Excluded from the Classes are Defendants, any entity in which Defendants have a controlling interest, and Defendants' officers, directors, legal representatives, successors, and assigns.

76.     Plaintiff reserves the right to modify, change, or expand the definitions of the proposed Classes based upon discovery and further investigation.

77.     *Numerosity:* The proposed Class is so numerous that joinder of all members is impracticable. Plaintiff believes that there are thousands of consumers who are Class Members as described above who have been damaged by Defendants' deceptive and misleading practices.

78.     *Commonality:* Questions of law and fact common to the Class Members predominate over any questions affecting only individual Class Members.

79.     *Typicality:* The claims or defenses of Plaintiff are typical of the claims or defenses of the Class. Class Members were injured and suffered damages in substantially the same manner as Plaintiff, Class Members have the same claims against Defendants relating to the same course of conduct, and Class Members are entitled to relief under the same legal theories asserted by Plaintiff.

80.     *Adequacy:* Plaintiff will fairly and adequately protect the interests of the proposed Class and has no interests antagonistic to those of the proposed Class. Plaintiff has retained counsel experienced in the prosecution of complex class actions.

81.     *Predominance:* Questions of law or fact common to proposed Class members predominate over any questions affecting only individual members. Common questions such as whether Defendants owed a duty to Plaintiff and the Class and whether Defendant breached its duties predominate over individual questions such as measurement of economic damages.

82.     *Superiority:* A class action is superior to other available methods for the fair and efficient adjudication of these claims because individual joinder of the claims of the Class is impracticable. Many members of the Class are without the financial resources necessary to pursue this matter. Even if some members of the Class could afford to litigate their claims separately, such

a result would be unduly burdensome to the courts in which the individualized cases would proceed. Individual litigation increases the time and expense of resolving a common dispute concerning Defendants' actions toward an entire group of individuals. Class action procedures allow for far fewer management difficulties in matters of this type and provide the unique benefits of unitary adjudication, economies of scale, and comprehensive supervision over the entire controversy by a single judge in a single court.

83.    *Manageability:* Plaintiff is unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**Violation of New York GBL § 349**
**(On behalf of Plaintiff and the New York Subclass)**

84.    Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

85.    New York General Business Law Section 349 ("GBL § 349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state . . .."

86.    The conduct of Defendants alleged herein constitutes recurring, "unlawful" deceptive acts and practices in violation of GBL § 349, and as such, Plaintiff and the New York Subclass Members seek monetary damages against Defendants.

87.    Defendants misleadingly, inaccurately, and deceptively advertise and market the Products to consumers.

88.    Defendants' improper consumer-oriented conduct—including failing to disclose that the Products contained Clostridium botulinum and concealing supply chain contamination

12

risks—is misleading in a material way in that it, inter alia, induced Plaintiff and the New York Subclass Members to purchase the Products and to use the Products when they otherwise would not have.

89.    Defendants made the untrue and/or misleading statements and omissions willfully, wantonly, and with reckless disregard for the truth.

90.    Plaintiff and the New York Subclass Members have been injured inasmuch as they purchased Products that were mislabeled. Accordingly, Plaintiff and the New York Subclass Members received less than what they bargained and paid for.

91.    Defendants' advertising and Products' packaging and labeling induced Plaintiff and the New York Subclass Members to buy the Products.

92.    Defendants' deceptive and misleading practices constitute a deceptive act and practice in the conduct of business in violation of New York General Business Law § 349(a) and Plaintiff and the New York Subclass Members have been damaged thereby.

93.    As a result of Defendants' recurring, "unlawful" deceptive acts and practices, Plaintiff and the New York Subclass Members are entitled to monetary, statutory, and compensatory damages, restitution, and disgorgement of all moneys obtained by means of Defendants' unlawful conduct, interest, and attorneys' fees and costs.

**<u>SECOND CAUSE OF ACTION</u>**
**Violation of New York GBL § 350**
**(On behalf of Plaintiff and the New York Subclass)**

94.     Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

95.     N.Y. Gen. Bus. Law § 350 provides, in part, as follows: False advertising in the conduct of any business, trade, or commerce or in the furnishing of any service in this state is hereby declared unlawful.

96.     N.Y. Gen. Bus. Law § 350a(1) provides, in part, that false advertising is misleading in a material respect, taking into account the extent to which the advertising fails to reveal facts material in the light of such representations.

97.     Defendants' labeling and advertisements contain untrue and materially misleading statements and omissions concerning the Products inasmuch as they misrepresent that the Products are safe for consumption and do not list that the Products contain Clostridium botulinum.

98.     Plaintiff and the New York Subclass Members have been injured inasmuch as they relied upon the labeling, packaging, and advertising and purchased Products that were mislabeled, dangerous, and entirely worthless.

99.     Defendants' advertising, packaging, and Products' labeling induced Plaintiff and the New York Subclass Members to buy the Products.

100.     Defendants made the untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

101.     Defendants' conduct constitutes multiple, separate violations of N.Y. Gen. Bus. Law § 350.

102.     Defendants' material misrepresentations were substantially uniform in content, presentation, and impact upon consumers at large. Moreover, all consumers purchasing the Products were and continue to be exposed to Defendants' material misrepresentations.

14

103. As a result of Defendants' recurring, "unlawful" deceptive acts and practices, Plaintiff and New York Subclass Members are entitled to monetary, statutory, and compensatory damages, restitution, and disgorgement of all moneys obtained by means of Defendants' unlawful conduct, interest, and attorneys' fees and costs.

## THIRD CAUSE OF ACTION
### Negligence
**(On Behalf of Plaintiff and the Nationwide Class)**

104. Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

105. The conduct of Defendants in manufacturing, sourcing, distributing, and selling the Products with the contamination of infant botulism constituted negligence in failing to reasonably act in accordance with all applicable standards of care.

106. Defendants owed Plaintiff and Class members a duty not to disseminate a materially contaminated product.

107. Defendants breached said duty of care when they nevertheless manufactured, distributed, and sold the Products with the contamination of Clostridium botulinum to consumers, including Plaintiff.

108. Defendant Organic West Milk further breached its duty of care by negligently and recklessly providing incomplete traceability information to the FDA during the 2025 botulism outbreak, allowing contaminated raw materials to continue flowing into the infant formula supply chain without proper regulatory oversight or public warnings.

109. Defendants also breached their duty of care by negligently failing to timely and/or adequately warn Plaintiff and the Class of the contamination of Clostridium botulinum, even after Defendants were, or should have been, fully aware that the Products were contaminated.

15

110.    As a direct and proximate result of Defendants' negligence, Plaintiff and Class Members suffered economic injury, entitling them to just compensation, as detailed below.

**FOURTH CAUSE OF ACTION**
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Nationwide Class)**

111.    Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

112.    Defendants represented to Plaintiff and Class members that the Products were reliable, merchantable, and safe to consume.

113.    The Products fail to conform to the performance, durability, capability, and reliability that Defendants represented and were therefore of a substantially lesser quality and value than Defendants represented.

114.    Defendants knew or should have known that the Products could not conform to representations because of the contamination of Clostridium botulinum.

115.    Defendants misrepresented, concealed, and omitted material information concerning the Clostridium botulinum found in the Products to induce Plaintiff and Class members to purchase the Products at a substantially higher price than what they would otherwise have paid.

116.    Plaintiff and Class members reasonably and justifiably relied on Defendants' representations and advertisements when purchasing the Products.

117.    Plaintiff and Class members would not have purchased the Products if they knew that they were contaminated with Clostridium botulinum, or they would have only paid substantially less.

16

118.    Plaintiff and Class members conferred substantial benefits on Defendants by purchasing contaminated Products at a premium without receiving a product that conformed to Defendants' representations.

119.    Defendants knowingly and willingly accepted and enjoyed these benefits.

120.    Defendants' retention of these benefits would be inequitable because Defendants obtained benefits to the detriment of Plaintiff and Class members when Plaintiff and Class members did not obtain their promised benefits.

121.    As a direct and proximate result of Defendants' conduct, Plaintiff and Class members are entitled to restitution.

**FIFTH CAUSE OF ACTION**
**Breach of Implied Warranty of Merchantability**
**(On behalf of Plaintiff and the Nationwide Class)**

122.    Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

123.    The sale of Defendants' Products created an implied warranty of merchantability pursuant to U.C.C. § 2-314.[1]

---

[1] All fifty States, the District of Columbia, and Puerto Rico have codified and adopted U.C.C. § 2-314: Ala. Code § 7-2-314; Alaska Stat. § 45.02.314; Ariz. Rev. Stat. Ann. § 47-2314; Ark. Code. Ann. § 4-2-314; Cal. Com. Code § 2314; Colo. Rev. Stat. § 4-2-314; Conn. Gen. Stat. Ann. § 42a-2-314; 6 Del. Code. § 2-314; D.C. Code. § 28:2-314; Fla. Stat. Ann. § 672.314; Ga. Code. Ann. § 11-2-314; Haw. Rev. Stat. § 490:2-314; Idaho Code § 28-2-314; 810 Ill. Comp. Stat. Ann. 5/2-314; Kan. Stat. Ann. § 84-2-314; Ky. Rev. Stat. Ann. § 355.2-314; La. Civ. Code Art. 2520; 11 Me. Rev. Stat. Ann. § 2-314; Md. Code. Ann. § 2-314; Mass. Gen. Law Ch. 106 § 2-314; Mich. Comp. Laws Ann. § 440.2314; Minn. Stat. Ann. § 336.2-314; Miss. Code Ann. § 75-2-314; Mo. Rev. Stat. § 400.2-314; Mont. Code Ann. § 30-2-314; Nev. Rev. Stat. U.C.C. § 104.2314; N.H. Rev. Ann. § 382-A:2-314; N.J. Stat. Ann. § 12A:2-314; N.M. Stat. Ann. § 55-2-314; N.Y. U.C.C. Law § 2-314; N.C. Gen. Stat. Ann. § 25-2-314; N.D. Stat. § 41-02-314; Ohio Rev. Code Ann. § 1302.27; Okla. Stat. tit. 12A § 2-314; Or. Rev. Stat. § 72.3140; 13 Pa. C.S. § 2314; P.R. Laws. Ann. Tit. 31, § 3841, et seq.; R.I. Gen. Laws § 6A-2-314; S.C. Code Ann. § 36-2-314; S.D. Stat. § 57A-2-314; Tenn. Code Ann. § 47-2-314; Tex. Bus. & Com. Code Ann. § 2-314; Utah Code Ann. § 70A-2-314; Va. Code § 8.2-314; Vt. Stat. Ann. 9A § 2-314; W. Va. Code § 46-2-314; Wash. Rev. Code § 62A 2-314; Wis. Stat. Ann. § 402.314; and Wyo. Stat. § 34.1-2-314.

124. Defendants, as the manufacturer, supplier, marketer, and distributor, impliedly warranted that the Products are merchantable as infant formula.

125. Plaintiff and Class Members purchased the Products relying on Defendants' skill and judgment in properly manufacturing, sourcing, packaging, and labeling the Products.

126. Defendants breached the warranty implied in the contract for the sale of the Products because they could not "pass without objection in the trade under the contract description," the Products were not "of fair average quality within the description," were not "adequately contained, packaged, and labeled as the agreement may require," and did not "conform to the promise or affirmations of fact made on the container or label if any."

127. As a result, Plaintiff and Class Members did not receive the goods as impliedly warranted by Defendants to be merchantable.

128. Defendants knowingly breached the implied warranties by including Clostridium botulinum in the Products sold to Plaintiff and the Class without properly notifying them of its inclusion in the Products.

129. Within a reasonable time after they knew or should have known, Defendants did not change the Products' label to include Clostridium botulinum in the ingredients list.

130. As a direct and proximate result of Defendants' breach of the implied warranties, Plaintiff and Class members have been injured and sustained damages.

131. Defendants have actual notice of the warranty claims alleged herein due to the recall of the Products.

## **PRAYER FOR RELIEF**

WHEREFORE, the following relief is requested:

    a.    An order certifying this action as a class action pursuant to Fed. R. Civ. P. 23.

b.    An award of statutory, compensatory, incidental, consequential, and punitive damages and restitution to the extent permitted by law in an amount to be proven at trial.

c.    An order enjoining Defendants' unlawful conduct.

d.    An award of attorneys' fees, expert witness fees, costs, and Class representative incentive awards as provided by applicable law.

e.    An award of interest as provided by law, including pre-judgment and post-judgment interest.

f.    Such other and further relief as this Court may deem just, equitable, or proper.

Dated:  Mineola, New York
        August 11, 2026                          **LEEDS BROWN LAW, P.C.**

                                                 _/s/ Brett R. Cohen_____
                                                 Brett R. Cohen
                                                 Jeffrey K. Brown
                                                 134 Mineola Boulevard - Second Floor
                                                 Mineola, New York 11501
                                                 Tel: (516) 873-9550
                                                 bcohen@leedsbrownlaw.com
                                                 jbrown@leedsbrownlaw.com

                                                 *Counsel for Plaintiff and Proposed Class*

19